188

E. D. KNIGHT, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 56865.   Promulgated May 24, 1933.

*J. C. Murphy, Esq.,* for the petitioner.
*Owen W. Swecker, Esq.,* for the respondent.

OPINION.

TRAMMELL: This is a proceeding for the redetermination of a deficiency in income tax for the year 1928 in the amount of $33.99. The sole issue is the amount of profit realized by the petitioner upon the sale during the taxable year of five shares of stock of the Piedmont Laundry Co. acquired in 1919.

The petitioner, who is an individual residing in Atlanta, Georgia, sold the stock in the taxable year for a cash consideration of $19,-516.77. In his income tax return for the calendar year 1928 the petitioner reported a profit from the sale of the stock computed upon the basis of a cost of $500 at the date of acquisition in June 1919. At the time the stock was acquired by the petitioner in 1919 it had a fair market value of $1,600 per share, or a total fair market value for the five shares of $8,000. In determining the deficiency in controversy, the respondent computed the profit on the sale of the stock on the basis of a cost of $500. The petitioner contends that the correct basis for computing such profit is the fair market value of $8,000 at date of acquisition.

The Piedmont Laundry Co. was a close corporation, all of the stock of which, prior to May 3, 1919, was owned by three individuals, one of whom was the father of the petitioner and another of whom was petitioner's half brother. Each of these individuals owned 50 shares, or one third of the stock of said corporation. On May 3, 1919, the president of the company died, and the stock owned by him passed to his estate. On June 7, 1919, a stockholders' meeting was held, at which all the issued and outstanding stock was represented in person or by proxy. At this meeting a resolution or motion was adopted by the stockholders authorizing an increase in capital stock from 150 shares, of the par value of $100 per share, to 160

shares of the same par value, and said resolution further authorized the sale of five shares of said stock to one V. F. Todd and five shares to E. D. Knight, petitioner herein, at par. value. Pursuant to the resolution petitioner thereafter acquired five shares of the stock at par value or a cost to him of $500.

In his return for 1919, the petitioner did not include therein any amount with respect to the transaction whereby he acquired the stock, and the Piedmont Laundry Co. in its return for the year 1919 did not claim as a business expense or otherwise any deduction with respect to this transaction.

The issue here resolves itself into the question whether the transaction by which petitioner acquired the five shares of stock was a bona fide sale and purchase, or whether the difference between the nominal sale price of $100 per share and the stipulated fair market value of $1,600 per share constituted a gift by the corporation to the petitioner, or represented additional compensation for services.

The minutes of the stockholders' meeting authorizing the " sale " recited that "A motion was made * * * and unanimously adopted, and it was mutually agreed among all the stockholders * * * that we should sell five shares of stock * * * to E. D. Knight, at par value."

The stock was " sold " to an employee who had rendered valuable services in the past and whose future services it was especially desired to retain. The petitioner was the son of one of the three equal owners of the corporation and the half brother of another. Petitioner had acquired a knowledge of the business and was influential in building it up. The directors felt that by petitioner having this stock he would be more interested in the business. They wanted to do something for him and felt that he would appreciate being able to acquire the stock on the basis on which offered to him. The petitioner was given the right to buy the stock at the reduced price on account of these considerations. The $100 a share at which the stock was sold was not the real consideration therefor. It was known to be worth $1,600 a share.

From a consideration of all the evidence, it is our opinion that the difference between the amount paid by the petitioner and the fair market value of the stock represents either a gift or additional compensation for services. If it was compensation, clearly its value when received is the basis to be used in determining the profit on a subsequent sale. If it was a gift the same rule applies. *G. Wildy Gibbs*, 28 B.T.A. 18; *Harry F. Robertson*, 5 B.T.A. 748.

In *Robinson* v. *Commissioner*, 59 Fed. (2d) 1008, identically the same issue was raised as is presented here, and under circumstances substantially similar. There Robinson was permitted to purchase

200 shares of the common stock of the Libbey Glass Co. at a price less than its fair market value. In its opinion the court said:

Whether the actual money cost of $200 per share \* \* \* or the market value of the stock at the time of acquisition is to control in fixing the capital base, presents the only question for our determination.

\* \* \* In each such case we think that the obvious intent of the parties, and their relationship as affecting intent, are the controlling considerations. Here the relationship between the parties, the personal interest shown by Mr. Libbey in the business career of the petitioner, the evident purpose of Mr. Libbey to educate the petitioner in the business, to the end that he might not only qualify himself for a position of executive responsibility, but that, in doing so, he might also create an investment estate for himself in the very company to which he was applying his talents, the conditions of the sale, and the admitted value of the stock in excess, perhaps largely in excess, of the agreed price, demonstrated, in our opinion that such excess value \* \* \* was either intended as a gift by Mr. Libbey to the petitioner, induced by a genuine paternal interest in the petitioner's welfare, or as in the nature of compensation for past or future services \* \* \*. Whether regarded as a gift or as compensation, it is evident that the surplus value, over and above the actual price paid for the shares, must be taken into consideration in determining the capital base, and that such base is to be fixed at the true or market value at the time the stock was acquired.

As in the *Robinson* case, it is immaterial here whether the excess value of the stock be regarded as a gift or as compensation for services. In either event, the basis for computing the profit realized by the petitioner from the sale of the stock in the taxable year 1928 is the fair market value of $8,000 at the time of acquisition in 1919.

The deficiency will be redetermined accordingly.

*Judgment will be entered under Rule 50.*